## Commonwealth v. Brady

*R. A. Freiler, J. F. Mahoney* and *Elwyn Jones,* for relator.

*J. B. McGurl* and *Kilker & Kilker,* for respondent.

PALMER, J., January 16, 1939.—The relator in this case filed on June 20, 1938, a suggestion praying for a writ of quo warranto and alleging in the suggestion, inter alia, that on December 20, 1937, this court removed Vincent Murphy, Lester Artz, Charles Simmet, Daniel Bush, and Roy Hossler as school directors of the School District of the Township of Branch (a school district of the fourth class) for failure to perform or for neglect in the performance of duties made mandatory by the provisions of the School Code of May 18, 1911, P. L. 309; and that on December 29, 1937, the court appointed him (the relator) to fill the unexpired term of Roy Hossler.

The suggestion further charges (inter alia):

"7. That on May 9, 1938, the Supreme Court of Pennsylvania in an opinion filed affirmed the opinion of your Honorable Court in removing and excluding from the office of director of the School District of the Township of Branch the said Vincent Murphy, Lester Artz, Charles Simmet, Roy Hossler, and Daniel Bush.

"8. That the terms of office of Vincent Murphy and Lester Artz expired during the pendency of the proceedings for ouster and Henry Gottschall and Clyde Shock were elected to succeed them at the election held on November 2, 1937.

"9. That notwithstanding your relator was legally appointed by your Honorable Court and that he qualified for said office and is entitled to exercise the rights, duties, privileges and prerogatives thereof, the respondent unlawfully intruded into, usurped, and exercised, and still does unlawfully intrude into, usurp, and exercise the office, rights, powers, and prerogatives of a school director in the Township of Branch, to which your relator is lawfully entitled; that the said respondent usurps upon the Commonwealth and the relator herein, without any lawful warrant or authority the said office of school director.".

Upon the suggestion aforesaid, on June 20, 1938, we allowed the writ, making it returnable July 11, 1938.

On July 9, 1938, respondent, Jerome Brady, moved to quash the writ on the following grounds:

"1. The writ was issued upon the filing of the suggestion and without a prior rule to show cause.

"2. The appointment of relator to the office of school director, averred in the suggestion, was unauthorized by law, and therefore void and of no effect. Consequently, the suggestion does not aver or show any right or interest in the matter in issue on the part of relator.

"3. At the time of the alleged appointment of relator to the office of school director averred in the suggestion, no vacancy existed in the office to which the relator was

appointed, and the alleged appointment of relator thereto, averred in the suggestion, was void and of no effect. Consequently, the suggestion does not aver or show any right or interest in the matter in issue on the part of relator.

"4. It is not averred, nor does it appear in the suggestion, that respondent, Jerome Brady, is exercising any office title to which the suggestion avers to be in relator, or that respondent, Jerome Brady, has excluded relator from any office to which said relator is entitled. Consequently, the suggestion does not aver or show any right or interest in the matter in issue on the part of relator.

"5. The suggestion does not aver or show that respondent, Jerome Brady, has no right or title to the office he is therein alleged to hold and exercise.

"6. The suggestion does not aver or show any good cause of action.

"7. The suggestion does not aver the facts upon which is founded the charge of usurpation of office by respondent with such clarity, definiteness, and certainty as are necessary to sustain the writ.

"8. The suggestion does not aver the facts upon which is founded the charge of usurpation of office by respondent with such clarity, definiteness, and certainty as will enable or allow respondent to make proper answer thereto."

At the oral argument, counsel for respondent abandoned the first and third reasons.

In disposing of reason no. 2, attention is directed to sections 214, 215, 216, and 217 of the School Code, supra, art. II.

Section 214 grants the right to remaining members of the board of school directors to fill a vacancy occurring in the board where the vacancy becomes existent "by reason of death, resignation, removal from the district, or otherwise".

Section 215 grants the right to the remaining members of any board of school directors to fill vacancies when

vacancies occur in the offices of a majority of the members.

Section 216 grants the right to the court of common pleas of the county in which such district, or the largest part in area thereof, is located when vacancies exist or occur in the membership of all the members of the board of school directors.

Section 217 provides that where a court of common pleas removes a board or such of its members as in its opinion is proper for failure to perform a duty, which is by the provisions of the act made mandatory upon them to perform, the said court shall "appoint for the unexpired terms other qualified persons in their stead, subject to the provisions of this act."

Counsel for respondent argues that the valedictory section in the phrase in section 217 quoted above, to wit: "subject to the provisions of this act" renders this instant section subordinate to the preceding sections dealing with the filling of vacancies, and refers to the provision in section 214 dealing with the mandate provided therein that, if the remaining members by reason of a tie vote or otherwise do not fill the vacancy within 30 days, the court of common pleas upon a petition of 10 or more resident taxpayers shall fill it.

The facts in these pleadings disclose, however, that vacancies occurred whereby the offices of a majority of the School District of Branch Township became vacant by the decree of this court; and thus the question before us is, whether the remaining minority members of the board had a right in the manner provided in section 215 to fill the vacancies occurring or whether we had the right so to do by virtue of the provisions in section 217.

As before stated, section 214 empowers the remaining members of the board to fill a vacancy when the vacancy results from death, resignation, or removal from the district, and section 215 contains no such provision. It is argued, since section 215 is silent as to the manner in which the vacancies shall occur before the remaining

members may act, that in all cases (no matter how the vacancies happened) the remaining minority members shall appoint in the manner prescribed.

If this interpretation should be sustained, the provisions contained in sections 215 and 217 would be obviously repugnant, providing the words "subject to the provisions of this act" were not contained in section 217. Does this immediately above-quoted phrase render the power of the court to appoint, in cases of removal for failure on the part of members of the school board to comply with mandatory provisions of the code, subject to and subordinate to the right of minority members to select persons to fill vacancies? Is it to section 215 that the phrase refers?

While it is true that section 215 ignores the manner in which vacancies occur in contradistinction to section 214, yet we feel that the intention of the legislature was that the minority members were granted the right only upon the condition that vacancies occurred as a result of death, resignation, or removal from the district for the reasons that sections 214 and 215 are the one context, both provide for a similar term as to time (until the first Monday in December after the first municipal election occurring more than 30 days after their appointment) their appointees shall hold office, and the particular subject under consideration in these sections was the subject of vacancies.

Supplying then to section 215 the words "by reason of death, resignation or removal from the district, or otherwise", does the word "otherwise" mean vacancies resulting from the action of the court of common pleas in removing the board or some of its members. Respondent argues that the word "otherwise" means "in any manner", but while it is a word of extensive signification, we think in construing it the "ejusdem generis" maxim of construction should apply.

" 'When an author makes use, first, of terms, each evidently confined and limited to a particular class of a known species of things, and then, after such specific

enumeration, subjoins a term of very extensive significa-
tion, *this term, however general and comprehensive in its
possible import*, [italics ours] yet when thus used, em-
braces only things "ejusdem generis" '—that is, of the
same kind of species—with those comprehended by the
preceding limited and confirmed terms. Ex p. Leland,
10 S. C. L. 460, 462; Pulom v. Jacob Dold Packing Co.,
182 Fed. 356, 359": 19 C. J. 1255 note 16(a) ; and hence
we come to the conclusion that the phrase "subject to the
provisions of this act" has no relation or reference to
the word "otherwise".

To what provision or provisions other than sections
214 and 215 of the School Code could the phrase have
reference? The words "subject to" are words of quali-
fication showing a purpose of the legislature not to
grant a power absolute, but a power subject to provisions
created in the act, but relative and qualifying words,
phrases and clauses are to be applied to the words or
phrase immediately preceding, and are not to be con-
strued as extending to or including others more remote.
In examining section 217, it is not clear to what immediate
phrase the phrase in question referred, and to hold that
it did have reference to the preceding sections makes sec-
tion 217 repugnant thereto.

However, one of the cardinal points to be kept in mind
in the construction or interpretation of this statute and
its sections is to make the provisions compatible and to
harmonize them; and to make the provisions referred to
in this opinion compatible and in harmony, and thereby
to give effect to all of its provisions we are constrained
to hold that the legislature did not intend the phrase
"subject to the provisions of this act" contained in sec-
tion 217 to have reference to the preceding sections relat-
ing to the filling of vacancies.

It is conceivable that the phrase meant to impress
upon the court the duty in selecting qualified persons
stated therein, but it sufficeth for our present purposes
to decide to what it does not refer. As to the fourth, fifth,

sixth, seventh, and eighth reasons set forth in the demurrer, the mere reading of paragraph 9 will be convincing that there is no merit in the reasons. That the court appointed relator, and that in his stead respondent is acting and therefore usurping is set forth with sufficient definiteness and clarity.

And now, January 16, 1939, respondent's demurrer is overruled and he is given 15 days from this date to file an answer on the merits.